Territorial Law Library

**IN THE SUPERIOR COURT
OF GUAM**

THE PEOPLE OF GUAM )   CRIMINAL CASE No. CF0428-94
)
vs. )   **DECISION AND ORDER**
)   re: Defendant's Motion to Compel
MARK BAMBA ANGOCO )   Discovery, Defendant's Motion to
)   Suppress Statements, Defendant's
Defendant. )   Motion to Dismiss for Failure to
)   Instruct the Grand Jury on the Law

This matter came before the court on December 11th, 2008. Attorney General David Rivera appeared representing the people. Attorneys Delia Lujan and Gloria Lujan both appeared representing the defendant, who was present. Yvette Blas-Ananich appeared for probation. Having reviewed the pleadings and the arguments presented the Court now issues the following decision and order.

**BACKGROUND**

This case concerns the 1994 killing of Darwin Datuin, allegedly by the defendant and several others. After much appellate procedure, the details of which are irrelevant here, the case is moving towards a second trial. The defendant has brought several motions prior to the second which would normally be reserved for criminal pre-trial practice, but which the defendant argues are also allowable in this context. The government argues that these motions are inappropriate prior to a second trial based on theories of waiver, and also against the motions individually on the merits. Six individual motions were argued on December 11th; three were resolved during that hearing and three the court subsequently took under advisement. The Defendant's Motion to Exclude Statements of Co-Defendant (namely John J. Pangelinan) was denied from the bench. Defendant's Motion for Bill of

Partculars was withdrawn orally by counsel during the hearing. Defendant's Motion to Enlarge Time was dismissed without prejudice, allowing defense counsel to file a more specific motion on the same issue should defendant choose to do so. The remaining motions in the case are Defendant's Motion to Compel Discovery, Defendant's Motion to Dismiss for Failure to Instruct the Grand Jury on the Law, and Defendant's Motion to Suppress Statements. Each of these individual motions will be addressed separately. The government has also raised in opposition to all three motions the common objection that defendant has forfeited his rights to make such motions via operation of 8 G.C.A. § 65.15 ( c ). This common argument will also be discussed separately, and as necessary during the sections concerning the individual motions.

DISCUSSION

**I. Defendant's Motion to Compel Discovery**

The defendant requests 30 individual items of discovery, generally under 8 G.C.A. § 65.25 (b) and 8 G.C.A. § 70, and specifically with individual arguments regarding specific requests. In their opposition, the government objects specifically to only 4 of the listed requests. As to the other requests the government states that discovery has been provided, discovery will be provided, or that there is no evidence responsive to the discovery request. The objected requests are identified as numbers 10, 11, 26, and 28 on the defendant's motion, and will be discussed below. The court also notes at the outset that it is mindful that the age of the case will likely make some issues of discovery more complex than it would normally be in a criminal matter.

**A. Request 10**

In request 10 the defendant demands "[a] copy of any federal or state probation or pre-sentence report of any prospective witness" and cites to *United States v. Strifler* 851 F. 2d

1197, 1201 (9th Cir. 1988). See Motion at 3. The government objects to this request as "beyond the scope of material that the People are required to disclose...no good cause exists for ordering the disclosure...the requested items are equally available to defendant as they are to the People...[and] the requested items are outside of the People's possession and control". See Response at 4.

The relevant language in *Strifler* states that "A defendant is entitled to material in a probation file that bears on the credibility of a significant witness in the case...[t]he trial court should then review the file in camera and release to the defendant all information of this character." *See U.S. v. Strifler* 851 F.2d 1197, 1201 (C.A.9 (Ariz.),1988) *citing Brady v. Maryland* 373 U.S. 83 at 87, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963) *and Moore v. Kemp* 809 F. 2d 702, 730 (11th Cir.) *Brady v. Maryland* is, of course, the touchstone case on the issue of discovery in criminal trials, and requires disclosure of any evidence "material either to guilt or to punishment" by the prosecution. 373 U.S. 83 at 87. A probation or pre-sentence report *may* contain evidence which is material to a specific case (as in *Strifler*, where the probation record of one government witness was deemed so egregious that a failure by the judge to find materiality after reviewing the file was "clear error"), and can potentially be discoverable under *Brady*. *See Strifler* at 1202.

This federal case law is reflected in the statutory scheme of 8 G.C.A. § 70.10 and § 70.15. Under 8 G.C.A. § 70.15 the court may order the prosecutor to disclose discovery material not covered under 8 G.C.A. § 70.10 provided that the items requested are material to the defense and that the request is reasonable. At this point in the instant case the court is not aware of whether such documents exist (and even whether any of the government's

witnesses have ever been under the supervision of either a state or a federal department of corrections) but if such records do exist, and if after *in camera* review determines their materiality, they should be provided to defendant under 8 G.C.A. § 70.15.[1]

As to the government's further objections; that the requested items are equally available to the Defendant and outside the government's control, the court turns to the general proposition that the government is responsible to turn over not just evidence under its control but evidence "the existence of which is known, or by the exercise of due diligence may become known to the prosecuting attorney." See 8 G.C.A. § 70.10 (a). The government has access to records and databases to which the public is not privy, and in this case use of those databases is likely the easiest possible way to determine whether any information of the type requested even exists. See i.e. *U.S. v. Auten* 632 F.2d 478, 481 (C.A.Tex., 1980) ("the prosecutor has ready access to a veritable storehouse of relevant facts").

**B. Request 11**

In request 11 the defendant requests "[t]he oral and written results of any polygraph test administered to any witness" citing *Carter v. Rafferty* 826 F. 2d 1299, 1306-09 (3d Cir. 1987) and *United States v. Lynn* 856 F. 2d 430, 432-33 (1st Cir. 1989). See Motion at 3. The government objects to the request as "the results of polygraphs are generally inadmissible. Such results, if they existed, would be irrelevant." See Response at 4.

---

[1]Nothing in this request seems to implicate the factors favoring non-disclosure presented in 8 G.C.A. § 70.15 (b).

As noted above, Guam statutory law requires that a discovery request seek evidence which is "material" to a defendant's case. See 8 G.C.A. § 70.15. Previous Guam law has been universally critical of the polygraph system, excluding it entirely unless its admissibility has been stipulated to by the parties prior to examination. *See People of Guam v. Cabrera*, DCA Crim. No. 86-00024A, 1987 WL 109387 (D. Guam App. Div. 1987); *People v. Pangelinan* No. CR95-00139A, 1996 WL 875775 (D. Guam 1996)[2]. It is important to note, however, than "inadmissible" does not necessarily equate to "immaterial" in the context of *Brady* requests. *See i.e. Sellers v. Estelle* 651 F.2d 1074, 1077 (C.A.Tex., 1981) ("In addressing the issue of materiality, the Magistrate found that [the evidence requested] would have been inadmissible, hence these reports were immaterial. Such a conclusion is unwarranted. First, by enabling the defense to examine these reports, Sellers may have been able to produce witnesses whose testimony or written statements may have been admissible. Second, the evidence here suppressed was material to the preparation of petitioner's defense, regardless of whether it was intended to be admitted into evidence or not.") (internal citation omitted). Polygraph results, as requested here, are potentially discoverable under 8 G.C.A. § 70.15. However in this case the distinction seems to be largely an academic one as the government also objects to the request on the basis that "[t]he People are unaware of any material responsive to this request." See Response at 4.

The lack of any asserted evidence of any polygraph administered to any witness in this

---

[2] Although this case concerns a different issue than that argued here, it should be noted that the case concerns the appeal of a co-defendant in this case from a ruling made by the judge who is also hearing this current case.

case persuades the court to reject this discovery request as improper. *Compare People v. Mendiola* 1999 Guam 8 at ¶ 48 (1999). It has hard to imagine that if any polygraphs were administered to any of the persons involved in this case, that after more than a decade of litigation not only in this case but also in the cases of the co-defendants, such results would not have come to light prior to this time. Should this in fact be the case, the defendant is free to re-assert a discovery demand for such results.

**C. Request 26**

In Request 26 the defendant seeks "[t]he personnel records of all officer witnesses in this case....[and]...[a]ll prospective witnesses' personnel files" citing United States v. Henthorn 931 F.2d 29 (9th Cir. 1991). See Motion at pg. 7. The defendant further states that "[t]he defendant denies making some of the statements alleged by officers investigating this case. Additionally, the manner in which the case was investigated by officers and reported by them in their official police reports will be attacked at trial. The officer personnel records are material for impeachment purposes[.]" The government argues that the defendant has not demonstrated materiality as required by 8 G.C.A. § 70.15, and cites multiple decisions of other jurisdictions in conflict with Henthorn. See Response at pgs. 4-5.

The conflict between Henthorn and the contrary authority cited by the government is not over whether government personnel files are discoverable by defendant, but rather over what the defendant must show prior to the production of such files, and who should be inspecting them. Henthorn holds that "[t]he government is incorrect in its assertion that it is the defendant's burden to make an initial showing of materiality. The obligation to examine the

files arises by virtue of the making of a demand for their production. However, following that examination, the files need not be furnished to the defendant or the court unless they contain information that is or may be material to the defendant's case." *See U.S. v. Henthorn* 931 F.2d 29, 31 (C.A.9 (Cal.),1991). In contrast, *United States v. Andrus* 775 F. 2d 825, 843 (7th Cir. 1985) held that:

> "The court held that the speculative assertion that impeaching material may be in a government file did not warrant an order to disclose the contents of the file or to produce the file for the court's inspection. Mere speculation that a government file may contain *Brady* material is not sufficient to require a remand for *in camera* inspection, much less reversal for a new trial. A due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court. Andrus was not entitled to the personnel files of the law enforcement witnesses without even a hint that impeaching material was contained therein." (internal citations omitted).

The question, therefore, is whether the defendant is required to make an initial showing of materiality before such information can be disclosed, or whether a mere demand for such files is sufficient to compel production of the files to the court for an *in camera* review by the court.

Initial burdens of materiality present a unique "chicken-and-egg" challenge to criminal defendants, who must (1) present an initial showing of materiality before receiving discovery, but also (2) review the discovery to determine if they contain any material evidence (being otherwise ignorant of their contents). In recognition of this difficult position, "[a] materiality standard normally 'is not a heavy burden'; rather, evidence is

material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *See U.S. v. Lloyd* 992 F.2d 348, 351, 301 U.S.App.D.C. 186, 189 (C.A.D.C.,1993), *quoting U.S. v. Felt* 491 F.Supp. 179, 186 (D.C.D.C., 1979).

In the instant case, the defendant has made materiality showing sufficient to satisfy this lenient standard by outlining its theory as to the materiality of the files in this case in the Motion[3]. Defendant is therefore entitled to *in camera* review of the personnel files for the purposes of determining materiality to this case under either the standards of *Henthorn* or those suggested by the government. However, given the number of years this matter has been before the courts it is likely that some officers are not available to be witnesses and will not be called. The prosecutor will provide the requested files for any officer likely to be called to the court for review. If the defendant has cause to request a file for a former officer not likely to be called he may submit another motion stating with specificity why the file should be reviewed *in camera*.

**D. Request 28**

The defense also requests "a list of and disclosure of exhibits the government may use at trial including but not limited to any power-point presentation, book, paper, document, photograph or tangible object." See Motion at pg. 7. The government responds that "the

---

[3] See Motion at pg. 7: "[t]he defendant denies making some of the statements alleged by officers investigating this case. Additionally, the manner in which the case was investigated by officers and reported by them in their official police reports will be attacked at trial. The officer personnel records are material for impeachment purposes[.]"

People object to this request to the extent that it is beyond the disclosure obligations specified in [8 G.C.A.] § 70.10. Upon information and belief all discoverable items within this request have previously been disclosed." Response at pg.5. This objection appears to be more of a conflict of semantics than a substantive objection, as the government concedes earlier in their response (as they must) the potential availability of discovery outside the scope of 8 G.C.A. § 70.10 (i.e. via 8 G.C.A. § 70.15). The government also fails to identify what, if anything, in the request they believe is specifically beyond the scope of 8 G.C.A. § 70.10, and notes that they believe have already complied with the request. The request is granted, with the government free to object more specifically to any particular portion of the request should it choose to do so.

The individual discovery requests discussed shall be resolved as stated above.

**II. Defendant's Motion to Suppress Statements**

The defendant's next motion concerns statements made to police on the night of November 5th, 1994. On the night of the 5th, at approximately 8:45 p.m., defendant was pulled over by a marked Guam Police Department vehicle. See Court's Order of 4/3/95, pg. 3. Defendant was orally advised of his *Miranda* rights by the officer Jose B. Palacios, and agreed to be interviewed at Pedro's Plaza. Id. Defendant's license and registration were confiscated. Id. After arriving at Pedro's Plaza, defendant was again read his rights, and signed a written consent form at approximately 9:33 p.m.. Id. Defendant was questioned by the police, and completed a first written statement at approximately 1:00 a.m.. Id

Defendant made further oral statements, and made a second written statement around 2:20 a.m. Id. After making the second statement, the defendant was asked to write a chronology of how he had spent the last few days. Id. Officer Palacios noticed discrepancies between the story related by defendant and previous accounts, and asked him to comment on an earlier oral statement. Id. At that point, defendant began shaking and made several further oral statements. Id at pgs. 3-4. Defendant was asked to put the last statements in writing, but refused. Id at pg.4. Defendant requested a lawyer at approximately 4:00 a.m. and interrogation ceased. Id. Defendant now seeks to suppress oral statements made between 1:00 a.m. and 4:00 a.m. based on an argument that "based on the totality of the circumstances, the initial warnings were not effective for the second and third interrogations which the police conducted between 1:00-4:00 a.m." See Motion at pgs. 3-4. Defendant's primary argument seems to be that while there may have been at one time an effective waiver of rights, that waiver was not effective for the entire series of interrogations which took place here. See Motion at pgs. 3-4, *citing State v. Treesh*, 90 Ohio St. 3d 460, 470, 739 N.E. 2d 749, 764 (Ohio, 2001).

The government opposes the motion on several grounds. First, the government asserts that "[s]ince the defendant is seeking to have the Court reconsider the denial of suppression of statements on *Miranda* grounds and since this Court has already decided this issue in the same case the People submit that the Court is precluded from reconsidering the issue." See Opposition at pg. 3. Second, the government argues that even if the totality of circumstances test suggested by *Treesh* is allowed, the warnings provided to the defendant in

this case were effective throughout the entirety of the interrogation up to the point where the defendant requested counsel. See Opposition at pgs. 4-6. The government also argues that the defendant's claims are estopped under 8 G.C.A. § 65. See Opposition at pgs. 6 -7.

**A. Law of the case, ruling of 4/3/95**

The prosecutor argues that the current Motion is precluded by previously established "law of the case" specifically the court's order of April 3rd, 1995. This argument is only partially correct. The Guam Supreme Court has held that "Under the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court." See *People v. Hualde* 1999 Guam 3 at ¶ 13 (1999) (citation omitted). This principal has been re-affirmed and expanded on in *People v. Gutierrez* 2005 Guam 19 at ¶ 36 (2005). However, defendant's current motion does not seek to have the court re-consider the 1995 order, but rather relies on a separate legal theory. Simply because both motions rely on *Miranda* and its progeny, does not mean that the current motion is therefore one to 'reconsider' the previous ruling. While the court agrees that the 1995 order continues to stand for the conclusion that "[c]onsidering the totality of the circumstances, [d]efendant did knowingly, voluntarily and intelligently waive his *Miranda* rights" when he signed the waiver form at approximately 9:30 p.m., this does not preclude the defendant from asserting a different *Miranda* theory. See 4/3/1995 Order at pg. 7[4].

---

[4] The order does preclude the defendant, via the "law of the case" doctrine, from arguing that this written waiver was ineffective. Although this is not the defendant's central contention in briefing (indeed this point seems to be conceded) defense counsel did make this argument during oral argument.

The court did not address whether "based on the totality of circumstances, the initial warnings were...effective for the second ant third interrogations". See Motion at 3-4. This is hardly surprising, considering the fact that the Order was handed down in 1995, and the case upon to assert this legal standard is an Ohio state case not handed down until 2001. *State v. Treesh*, 90 Ohio St. 3d 460, 739 N.E. 2d 749 (Ohio, 2001). Even assuming *arguendo* that this is a legitimate legal standard upon which the defendant may claim relief (by no means a settled question) the court finds that the defendant is not entitled to relief, and therefore denies the defense's motion. Both *Treesh* and the primary case relied upon in *Treesh*, *State v. Barnes*, 25 Ohio St.3d 203, 208, 25 OBR 266, 270, 495 N.E.2d 922, 926 (1986) discuss interrogations which give the court guidance in making this determination. In *Treesh* the defendant received only a partial oral advisement of his rights upon arrival at the police station and commencement of formal interrogation, although he did eventually receive effective *Miranda* warnings subsequent to some interrogation. *See Treesh* at 471. Nevertheless, the Ohio Supreme Court upheld the trial court's ruling that the statements made by the defendant were admissible. *Id* at 472. Here, defendant received a full written *Miranda* waiver which he initialed and was found to have understood. See 4/3/95 Order at pg. 7. In *Barnes* the defendant was not re-advised of his rights for an entire day, and only the advised that his rights till applied. *See Barnes* at 207-208. In this case, despite characterization of the interval as longer, defendant waived his rights at 9:30 p.m. and requested counsel at 4 a.m., an interval of less than 7 hours. The court also takes note of the language of *Barnes* cited by the government stating that "[a]lthough re-reading appellant's

rights to him at this time would have been an extra precaution, it is not one mandated by the Ohio or United States Constitutions." *State v. Barnes* 25 Ohio St.3d 203, 208, 495 N.E.2d 922, 926 (Ohio,1986). Similarly, while further re-advisements of rights to the defendant in this case may have been tactful, the officer's failure to re-advise is not grounds to suppress the statements at issue.

As the court decides the Motion to Suppress on this Issue, the court does not proceed to the government's further argument concerning estoppel and waiver. The Defendant's Motion to Suppress Statements is DENIED.

**III. Defendant's Motion to Dismiss for Failure to Instruct the Grand Jury on the Law**

The defendant also argues that "the Grand Jury did not have reasonable cause to indict Defendant due to the Government's failure to instruct the Grand Jury on all the relevant law." See Motion at pg. 3. The defendant argues, correctly, than the Grand Jury in this case was not read any law which instructed them on the definition of "attempt". See Motion at 4. This, defendant argues, is relevant as the elements of Felony Aggravated Murder (the second charge in this case) include 9 G.C.A. § 16.30 (a) (2): "it is committed during the commission or attempt to commit any felony defined in [relevant criminal statutes]." From these facts, the defendant concludes that "[w]ithout providing the legal definition of 'attempt' the Grand Jury could not have had reasonable cause to indict the Defendant on felony aggravated murder." See Motion at 4.

The government contends that the defendant is to impose a improper burden upon the

government is terms of required detail and specificity of law instructions to the Grand Jury. See Response pgs. 2-4. The government relies primarily on *People v. Grajo* DCA Crim. No. 86-00002, 1987 WL 109393 (D. Guam App. Div. 1987).

The defendant relies primarily on two cases, *People v. Jimmy Aguon Manley*, Criminal Case No. CF0295-01, D&O (Sup. Ct. Guam Feb. 27, 2002), and *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). The court in *Manley* stated that "In order to determine if an indictable offense was committed, the grand jury must be aware of what elements constitute the alleged offense and then evaluate the evidence to determine if the offense was committed and if the defendant committed it." *Manley* at pg.5. In the *Du Bo* the grand jury indicting the defendant was not instructed on the *mens rea* required to commit extortion under federal law. The *Du Bo* court held "that an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *Dub Bo* at 1179. The defendant's implication in presenting these two case (although, tellingly, this is never explicitly argued) is that a failure to instruct on 'attempt' is an error of the same magnitude as what occurred in these two cases; that 'attempt' is an 'element' or even an 'essential element' of the felony murder charge. This is incorrect. The Guam statute defining Aggravated Murder (9 G.C.A. § 16.30) states the following: "(a) Criminal homicide constitutes aggravated murder when: (1) it is committed intentionally with premeditation; or (2) it is committed during the commission or attempt to commit any felony...or, (3) death is

directly caused by the illegal use of a Schedule I Controlled Substance...to a minor child...or (4) it is committed upon the orders of another person." The construction and structure of this statute indicates that the elements of Aggravated Murder are (a) criminal homicide (as defined by 9 G.C.A. § 16.20) and (b) one of the 4 other potential aggravating factors listed. The defendant submits no authority contradicting this construction, or any authority that an instruction on both attempt and commission are required to have a valid charge of felony murder in any jurisdiction.

Supporting this conclusion drawn from the text of the statute is the language of Grajo, which rejected the argument that "the prosecution's obligations regarding the presentation of exculpatory evidence to include explaining the significance of such evidence and the *possibility* of charging the suspect with a lesser offense." *People of Territory of Guam v. Grajo* 1987 WL 109393, 2 (D.Guam App.Div.,1987) (emphasis added). The *Grajo* court also sates the general rule in federal courts that "the prosecutor exercises great discretion in presenting a proposed indictment to a grand jury...and that the government need not detail the law applicable to *every potential offense* against the accused." *Id* at 2 (emphasis added, citations omitted). A ruling that a prosecutor charging felony murder would have to in every case detail both the inchoate and substantive versions of the felony charged is clearly beyond the scope of the duties of the prosecutor under Guam law. Post-hoc evidence that the defendant was eventually acquitted of robbery and that the court has previously emphasized the importance of "attempt" in this case as it has unfolded does not retroactively make the original indictment improper. See Motion at pgs. 4-5.

The defendant's Motion to Dismiss for failure to Instruct the Grand Jury on the Law is DENIED.

**IV. The Government's general waiver arguments under 8 G.C.A. § 65.15 ( c )**

The Government presents in opposition to the three motions disposed of here (and in other submissions) the language of 8 G.C.A. § 65.15 which states that: "Any defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following shall be raised prior to trial...[subsections relevant to all the motions presented here]". The government emphasizes the mandatory phrasing of the statute; arguing essentially that simply because defendant has been granted a re-trial in this case, it does not follow that he is entitled to another pre-trial, and that all of these motions should be precluded as waived by operation of law as they were not raised before defendant's first trial. In opposition to this broad theory, the defendant presented to the court at oral argument the case of United States v. Romano 241 F. Supp. 933 (D. Ct. Me., 1965).

The *Romano* case involved several co-defendant who were originally convicted at trial of multiple charges springing from an illegal bootlegging operation. *Id* at 935. On appeal, the convictions of the defendants were reversed on the grounds that some of the evidence used at trial was obtained via an illegal search. *Id*. The defendants before their re-trial, filed further motions under the Federal Rules of Criminal procedure to suppress other evidence which the alleged was the result of a second distinct illegal search. *Id*. The government

argued that under the federal rules defendants had waived their rights to make further 'pretrial' evidentiary motions. *Id.* At 936. The court disagreed, finding that: "[the] purpose [of the relevant federal rule] is to avoid the delay and confusion which would result from the necessity of determining during trial an issue as to the admissibility of evidence which may be efficiently isolated and disposed of in advance of trial...[d]efendants' present motions have been filed well in advance of their impending second trial, and the issues which they present can be determined at this time without contravening the policy underlying the Rule." *U.S. v. Romano* 241 F. Supp. 933, 936 (D.C. Me. 1965) (citation omitted). The court further held that: "[a defendant] is not precluded from filing a motion to suppress evidence prior to his retrial. Nor is he precluded from urging in support thereof legal grounds not previously raised." *Id* at 936-937 (citation omitted). While the government is correct in pointing out "the dissimilarity of the rule interpreted in *Romano* to Guam's current statutory provisions" the court finds the reasoning of the *Romano* court is sound, and can provide guidance in this case. See Government's Supplemental Submission Concerning *Romano* Decision at pg. 3.

In this case, the parties are returning to trial more than 15 years subsequent to the original incident. Allowances must be made for this unique situation. As in *Romano*, the court feels that *some* of the issues presented by the defendant in this case can be determined at this time without contravening the policy underlying the Guam statutes. Regarding the defendant's discovery requests, the court recognizes the difficult both the government and the defendant will have to contend with in preparing this case for trial. Defendant's current counsel (who did not represent him in the original trial) must be provided with discovery sufficient to

argue their case in a manner which a closely as possible approximates the opportunity of defendant's original counsel to do so. This will require the co-operation of the government. The defendant's other two Motions are less supported by the *Romano* case. Although *Romano* states the proposition that a defendant is entitled to file suppression motions prior to his retrial, including use of legal grounds not previously raised, it does not follow that the defendant is entitled to re-litigate issues previously decided by the court based on legal standards created years after the original motions were decided.

Having decided all the motions under advisement on other grounds, the court declines to rule on the effect of 8 G.C.A. § 65.15 on further motions in this matter. This section should still be taken by the litigants in the current case as guidance as to the court's opinion of what will in future be required of the parties in litigating this unique re-trial properly.

## CONCLUSION

The individual discovery requests discussed shall be resolved as stated above. The Defendant's Motion to Suppress Statements is DENIED. The defendant's Motion to Dismiss for failure to Instruct the Grand Jury on the Law is DENIED.

SO ORDERED this 30th day of October 2009.

KATHERINE A. MARAMAN
JUDGE, Superior Court of Guam

I do hereby certify that the foregoing is a full, true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.

OCT 3 0 2009

Joleen Q. Camacho
Deputy Clerk, Superior Court of Guam